IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN HYPOLITE,

        Plaintiff,                      No. 2:05-cv-0428 MCE KJN P

    vs.

CDCR, et al.,

        Defendants,                 FINDINGS AND RECOMMENDATIONS

                                     /

I. Introduction

        Plaintiff is a state prisoner proceeding without counsel, with a claim brought under the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] Pending before the court are defendants' motion for summary judgment, filed on April 3, 2009, to which plaintiff filed his opposition on April 22, 2009. Defendants filed a reply on April 29, 2009.

        On March 5, 2010, the court ordered the parties to brief the issue whether monetary damages are legally recoverable under RLUIPA against defendants in their individual or official capacities. Both parties have timely filed briefs.

        For the reasons that follow, it is recommended that summary judgment be granted for defendants and this case be closed.

II. Complaint

        In his amended complaint, plaintiff challenges the grooming regulation

---

[1] Plaintiff's other claims have previously been dismissed. Dkt. Nos. 32, 40.

1

implemented in 1997 by the California Department of Corrections, now the California Department of Corrections and Rehabilitation (CDCR).  That regulation restricted the length of a male inmate's hair as follows:

> A male inmate's hair shall not be longer than three inches and shall not extend over the eyebrows or below the top of the shirt collar while standing upright.  Hair shall be cut around the ears, and sideburns shall be neatly trimmed, and shall not extend below the mid-point of the ear.  The width of the sideburns shall not exceed one and one-half inches and shall not include flared ends.

Cal. Code of Regs., tit.15 § 3062(e) (1997).

In his amended complaint, plaintiff alleges that he is of the Rastafarian faith and that a fundamental tenet of that faith prohibits the cutting of his hair.  Amended Complaint (Am. Compl.), Dkt. No. 10, at 2.  Plaintiff alleges that while incarcerated at the California Medical Facility (CMF), he was charged with several rule violations between October of 2001 and August of 2005 for failing to comply with the challenged grooming regulation.  Id. at 2-6.  Specifically, plaintiff alleges that Rule Violation Reports (RVRs) were issued against him for violating California Code of Regulations, title 15 § 3062 on October 19, 2001, February 17, 2005, March 30, 2005, May 25, 2005, and August 17, 2005.  Id.  Plaintiff contends that the final August 17, 2005 rule violation report was reissued on September 21, 2005, and that on September 22, 2005, he was found guilty of violating the challenged grooming regulation.  Id. at 5-6.  Plaintiff also alleges that from February of 2005 through November of 2005 he notified various prison officials, including CDCR Director Tilton, Warden Schwartz, Associate Warden O'Ran, Appeals Coordinator Grannis and others, of the RVRs being issued against him and requested, among other things, that the charges be withdrawn or at least be held in abeyance until there was a final ruling on the regulation by the courts.  Id. at 6-8.

Twelve defendants remain in this action.  Those defendants are the correctional officers who issued the RVRs, the prison officials who found plaintiff guilty of the rule violations following disciplinary hearings, the warden and associate wardens of CMF, the officials who reviewed plaintiff's administrative appeals, the Director of CDCR and the Chief of

the Inmate Appeals Branch.  Plaintiff seeks the following relief:  (1) that the disciplinary actions relating to his grooming violations be expunged from his CDCR records;[2] (2) nominal and compensatory damages in the amount of $100,000 from each defendant; and (3) punitive damages from each defendant.  Id. at 13.

III. Motion for Summary Judgment

Legal Standard

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

---

[2] As addressed below, such violations have already been removed from plaintiff's central file.

3

1  satisfied." Id. at 323.

2  If the moving party meets its initial responsibility, the burden then shifts to the
3  opposing party to establish that a genuine issue as to any material fact actually exists. See
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to
5  establish the existence of this factual dispute, the opposing party may not rely upon the
6  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
7  form of affidavits and/or admissible discovery material in support of its contention that the
8  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party
9  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
10 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
11 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
12 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
13 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
14 1436 (9th Cir. 1987).

15 In the endeavor to establish the existence of a factual dispute, the opposing party
16 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
17 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
18 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
19 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
20 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
21 committee's note on 1963 amendments).

22 In resolving the summary judgment motion, the court examines the pleadings,
23 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
24 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
25 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
26 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

IV. Undisputed Facts

The following defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted have been deemed undisputed. Plaintiff adheres to the Rastafarian religion which prohibits its believers from cutting their hair.[3] DUF #1. Plaintiff received a RVR for violating the prison grooming regulation on October 19, 2001, February 17, 2005, March 30, 2005, and May 25, 2005. DUF #2, 4, 6, 8. Plaintiff received a RVR on August 17, 2005, for a grooming violation that was amended and reissued on September 21, 2005. Am. Compl. at 8, DUF #10.

On July 29, 2005, the Ninth Circuit held that CDCR's grooming regulation for male prisoners violated RLUIPA. Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005). Effective January 17, 2006, CDCR amended its grooming standards to allow long hair. DUF #1

V. Disputed Facts

The parties dispute when defendants became aware of the ruling in Warsoldier. Defendants state they were not aware of Warsoldier until January 17, 2006, when the regulation was changed, and they were enforcing the existing grooming regulation until that time. DUF #20. Plaintiff maintains that defendants were aware of Warsoldier at an earlier date. Plaintiff's Undisputed Facts #18, 20.

---

[3] Plaintiff voluntarily cut his hair in 1999 due to the death of his father and in 2002 due to the death of his grandmother. Opposition, Exh. A.

VI. <u>Analysis</u>

    <u>Religious Land Use and Institutionalized Persons Act</u>

        Plaintiff seeks injunctive and monetary relief under RLUIPA. Defendants argue that plaintiff's claims for injunctive relief are now moot, there is no connection between defendant Tilton and the enforcement of the former grooming regulation, and the remaining defendants are entitled to qualified immunity. Motion for Summary Judgment (Motion) at 1. Plaintiff concedes that his claims for injunctive relief are now moot as all RVRs have been removed from his central file. Opposition to Summary Judgment (Opposition) at 2.

        Therefore, the sole issue is whether plaintiff is entitled to monetary damages for receiving several RVRs that were later expunged.[4] It is an open question in this circuit whether plaintiff can recover monetary damages under RLUIPA against defendants in their individual capacities. Both parties have now briefed the issue. Defendants contend that damages are not available under RLUIPA, while plaintiff maintains damages are appropriate. Dkt. Nos. 57, 58.

        The Religious Land Use and Institutionalized Persons Act of 2000 provides in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.

        On July 29, 2005, the Ninth Circuit held that CDCR's grooming regulation for male prisoners violated RLUIPA, because the policy was not the least restrictive means to achieve the state's compelling interest in maintaining prison safety and security. See <u>Warsoldier</u>

---

[4] As all RVR's have been expunged, it is not entirely clear what injury plaintiff has suffered that would entitled him to money damages. Based on plaintiff's pleadings it does not appear that he was ever forced to cut his hair. Opposition, Exh. A.

v. Woodford, 418 F.3d 989 (9th Cir. 2005).  In response to Warsoldier and other litigation, CDCR made changes to its grooming regulation that took effect on January 17, 2006, less than six months after Warsoldier.  The new grooming regulation, in relevant part, allows an inmate's hair to be any length "but [hair] shall not extend over the eyebrows, cover the inmate's face or pose a health and safety risk." Cal.Code Regs. tit. 15, § 3062(e) (2006).

Monetary Damages

Plaintiff seeks compensatory damages in the amount of $100,000 from each defendant and punitive damages.  Am. Compl. at 13.

Individual Capacity

RLUIPA creates a cause of action for suits against "a government," which is defined, in pertinent part, as a "State, county, municipality, or other governmental entity," and "branch, department, agency, instrumentality, *or official* of an entity listed in [the previous clause]," and "*any other person* acting under color of state law." 42 U.S.C. § 2000cc-5(4) (emphasis added).  Despite this language, several Circuit Courts have held that RLUIPA does not create a cause of action for damages against officials in their individual capacity.  See Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 886-89 (7th Cir. 2009); Sossamon v. Lone Star State of Texas, 560 F.3d 316, 327-29 (5th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1271-75 (11th Cir. 2007).  These Circuits concluded that Congress enacted RLUIPA pursuant to the Spending Clause and did not indicate with sufficient clarity an intent to condition the states' receipt of federal funds on the creation of an individual capacity action for damages; moreover, a contrary reading of the statute would raise serious constitutional concerns about the extent of Congress's authority under the Spending Clause.  See Rendelman, 569 F.3d at 187-89; Nelson, 570 F.3d at 887-89; Sossamon, 560 F.3d at 327-29; Smith, 502 F.3d at 1271-75.

The Ninth Circuit has not yet addressed this issue.[5]  However, the Ninth Circuit

---

[5] However, although not addressing the issue, the Ninth Circuit has issued unpublished decisions that, by affirming defendants' entitlement to qualified immunity, implicitly assume the

has upheld the constitutionality of RLUIPA as an enactment under the Spending Clause.  See Mayweathers v. Newland, 314 F.3d 1062, 1066-67 (9th Cir. 2002).  Thus, this court adopts the reasoning of the Fourth, Fifth, Seventh, and Eleventh Circuits in the above cases and concludes that plaintiff cannot assert a RLUIPA claim for damages against defendants in their individual capacities.  See Rupe v. Cate, ---F.Supp.2d ----, 2010 WL 430826, *6-*7 (E.D. Cal., February 1, 2010); Harris v. Schriro, 652 F.Supp.2d 1024, 1028-30 (D. Ariz., Aug.11, 2009) (dismissing individual capacity claims for damages under RLUIPA based on out-of-circuit authority); Pogue v. Woodford, 2009 WL 2777768, *9 (E.D. Cal., August 26, 2009); but see Guru Nanak Sikh Society of Yuba City v. County of Sutter, 326 F. Supp.2d 1140, 1162 (E.D. Cal. 2003) (court noted that the recovery of damages under RLUIPA is an open question and only granted plaintiff nominal damages of one dollar against each defendant); Sokolsky v. Voss, 2009 WL 2230871, *5-*6 (E.D. Cal., July 24, 2009) (court found on a motion to dismiss that defendants in their individual capacities were not entitled to qualified immunity regarding a Kosher food claim).

Therefore, plaintiff's RLUIPA claims for damages against defendants in their individual capacities should be dismissed.

Official Capacity

The next issue is whether plaintiff can assert a RLUIPA claim for damages against defendants in their official capacities.  "[A] suit against a state official in his or her official capacity is . . . no different from a suit against the State itself."  Will v. Michigan Dep' t of State Police, 491 U.S. 58, 71 (1989).  The Eleventh Amendment prohibits federal jurisdiction over claims against a state unless the state has consented to suit or Congress has abrogated its immunity.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984).  The state's consent to suit, however, must be unequivocally expressed.  Id.

---

existence of an individual capacity RLUIPA claim for damages. See Campbell v. Alameida, 295 Fed. Appx. 130, 131 (9th Cir. 2008); Von Staich v. Hamlet, 2007 WL 3001726, at *2 (9th Cir. 2007).

While there is a split of authority between the other circuits regarding whether a state's receipt of prison funds constitutes a waiver of its sovereign immunity from suits seeking monetary damages, the Ninth Circuit recently issued an opinion while the parties were briefing this issue. On April 5, 2010, the Ninth Circuit held in <u>Holley v. California Dept. of Corrections</u>, --- F.3d ----, 2010 WL 1268197 (9th Cir. 2010), that the "Eleventh Amendment bars suit for official-capacity damages under RLUIPA." <u>Id</u>. at *4. The Ninth Circuit noted the following while referring to the "appropriate relief"[6] language in the RLUIPA statute:

> This statutory text does not "unequivocally express[ ]" a waiver of sovereign immunity. The phrase "appropriate relief" does not address sovereign immunity specifically at all, let alone "extend [a waiver of sovereign immunity] unambiguously to . . . monetary claims" in particular. We join five of the six circuits to have considered this question in holding that "RLUIPA's 'appropriate relief' language does not unambiguously encompass monetary damages so as to effect a waiver of sovereign immunity from suit for monetary claims . . .

<u>Id</u>. at *3 (internal citations omitted).

Therefore, plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment.

<u>Qualified Immunity and Punitive Damages</u>

As the court has found that RLUIPA does not provide for monetary damages, the court need not address the issues of qualified immunity and punitive damages.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 43), filed on April 3, 2009, be granted and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[6] A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government. 42 U.S.C. § 2000cc-2(a) (emphasis added).

9

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
2  objections shall be filed and served within fourteen days after service of the objections.  The
3  parties are advised that failure to file objections within the specified time may waive the right to
4  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 27, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

hypo0428.sj2